No. 11-1099

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

───────────────────────────

MARK J. MCBURNEY and ROGER W. HURLBERT,
*Plaintiffs-Appellants*,

v.

HON. NATHANIEL L. YOUNG, JR., Deputy Commissioner and Director,
Division of Child Support Enforcement, Commonwealth of Virginia, and

THOMAS C. LITTLE, Director, Real Estate Assessment
Division, Henrico County, Commonwealth of Virginia,
*Defendants-Appellees*.

───────────────────────────

On Appeal from the United States District Court
for the Eastern District of Virginia

───────────────────────────

**BRIEF OF APPELLANTS MARK J. MCBURNEY, ET AL.**

───────────────────────────

STEPHEN W. BRICKER
BRICKER LAW FIRM, P.C.
411 E. Franklin Street, Suite 504
Richmond, VA 23219
(804) 649-2304

LEAH M. NICHOLLS
BRIAN WOLFMAN
INSTITUTE FOR PUBLIC REPRESENTATION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Avenue, NW, Suite 312
Washington, DC 20001
(202) 962-5300

*Counsel for Appellants*

March 16, 2011

### UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. _____      Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____ who is _____, makes the following disclosure:
  (name of party/amicus)               (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO
2.      Does party/amicus have any parent corporations?      YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
           (signature)                                                        (date)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF ISSUES ..................................................................2

STATEMENT OF THE CASE ..............................................................2

STATEMENT OF THE FACTS .............................................................7

  A. McBurney ............................................................................7

  B. Hurlbert ..............................................................................9

SUMMARY OF THE ARGUMENT ........................................................11

STANDARD OF REVIEW .................................................................14

ARGUMENT ...............................................................................14

  I.     VFOIA'S CITIZENS-ONLY PROVISION IS UNCONSTITUTIONAL UNDER ARTICLE IV'S PRIVILEGES AND IMMUNITIES CLAUSE. ...............................................................................14

    A. VFOIA Burdens Hurlbert's Right to Pursue a Common Calling. ...............16

    B. VFOIA Burdens Several Other Privileges Guaranteed to Plaintiffs By the Privileges and Immunities Clause. ............................................22

      1. VFOIA Implicates McBurney's and Hurlbert's Rights of Equal Access to Information and Political Advocacy. ....................................22

      2. VFOIA Implicates McBurney's and Hurlbert's Right of Equal Access to Courts. ...............................................................................28

      3. VFOIA Implicates McBurney's and Hurlbert's Ability to Pursue Their Economic Interests. ....................................................................29

i

C. VFOIA'S Citizens-Only Provision Lacks a Valid Justification. .................31

II.    VFOIA'S CITIZENS-ONLY PROVISION IS UNCONSTITUTIONAL
       UNDER THE DORMANT COMMERCE CLAUSE. .............................36

A. VFOIA'S Citizens-Only Provision Discriminates Against Interstate
   Commerce On its Face and In Effect. ........................................37

B. VFOIA Is Neither Justified by Legitimate Local Interests, Nor Is It the
   Least Discriminatory Alternative. ..............................................40

C. Government Functions Are Subject to Dormant Commerce Clause Scrutiny
   When the State Discriminates Among Private Entities. .............................43

CONCLUSION ....................................................................44

REQUEST FOR ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

STATUTORY ADDENDUM

VIRGINIA FREEDOM OF INFORMATION ACT ...........................................1A

VA. CODE. ANN. § 2.2-3700(B) ....................................................1A

VA. CODE ANN. § 2.2-3704...........................................................2A

CERTIFICATE OF SERVICE

ii

# TABLE OF AUTHORITIES

## CASES

*Associated Tax Services v. Fitzpatrick*,
　　372 S.E.2d 625 (Va. 1988) .........................................................................39

*Austin v. New Hampshire*,
　　420 U.S. 656 (1975)....................................................................................22

*Baldwin v. Fish & Game Commission of Montana*,
　　436 U.S. 371 (1978).....................................................................16, 17, 23

*Beskind v. Easley*,
　　325 F.3d 506 (4th Cir. 2005) .....................................................................37

*Blake v. McClung*,
　　172 U.S. 239 (1898).............................................................................28, 29

*Bounds v. Smith*,
　　430 U.S. 817 (1977)....................................................................................28

*Brooks v. Vassar*,
　　462 F.3d 341 (4th Cir. 2006) .....................................................................36

*Brown-Forman Distillers Corp. v. New York State Liquor Authority*,
　　476 U.S. 573 (1986).....................................................................................38

*C & A Carbone, Inc. v. City of Clarkstown*,
　　511 U.S. 383 (1994).....................................................................................43

*Canadian Northern Railway Co. v. Eggen*,
　　252 U.S. 553 (1920).....................................................................................22

*City of Philadelphia v. New Jersey*,
　　437 U.S. 617 (1978)..........................................................................7, 38, 40

*City of Richmond v. J.A. Croson Co.*,
　　488 U.S. 469 (1989).....................................................................................41

*Dennis v. Higgins*,
        498 U.S. 439 (1991)...................................................................................36

*Department of Revenue of Kentucky v. Davis*
        553 U.S. 328 (2008)...................................................................................43

*Doe v. Bolton*,
        410 U.S. 179 (1973)...................................................................................22

*Environmental Technology Council v. Sierra Club*,
        98 F.3d 774 (4th Cir. 1996) ...........................................................36, 37, 42

*Frontiero v. Richardson*,
        411 U.S. 677 (1973)...................................................................................41

*Fulton Corp. v. Faulkner*,
        516 U.S. 325 (1996)...................................................................................36

*Hicklin v. Orbeck*,
        437 U.S. 518 (1978)..............................................................................15, 20

*Hughes v. Oklahoma*,
        441 U.S. 322 (1979)..............................................................................37, 41

*Lee v. Minner*,
        458 F.3d 194 (3d Cir. 2006) ...................... 2, 6, 12, 22, 22–23, 23, 24, 26, 32

*Lewis v. Casey*,
        518 U.S. 343 (1996)...................................................................................28

*Maine v. Taylor*,
        477 U.S. 131 (1986)...................................................................................37

*McBurney v. Cuccinelli*,
        616 F.3d 393 (4th Cir. 2010) ...................... 3, 4, 5, 15, 17, 18, 19, 21, 22, 26

*McBurney v. Mims*,
        No. 3:09-CV-44, 2009 WL 1209037 (E.D. Va. May 1, 2009)......................3

iv

*Mullaney v. Anderson*,
  342 U.S. 415 (1952)..................................................................33

*New Energy Co. of Indiana v. Limbach*,
  486 U.S. 269 (1988) ...............................................................41

*Oregon Waste Systems, Inc. v. Department of Environmental Quality*,
  511 U.S. 93 (1994)...................................................13, 37, 40, 41

*Parnell v. Supreme Court of Appeals of West Virginia*,
  110 F.3d 1077 (4th Cir. 1997) ................................................20

*Payne Enterprises, Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988)................................................39

*Paul v. Virginia*,
  75 U.S. 168 (1868)..................................................................15

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970)................................................................37

*Saenz v. Roe*,
  526 U.S. 489 (1999)................................................................22

*Shipbuilders Council of America v. U.S. Coast Guard*,
  578 F.3d 234 (4th Cir. 2009) ..................................................14

*Supreme Court of New Hampshire v. Piper*,
  470 U.S. 274 (1985)...............................................15, 20, 22, 35

*Tangier Sound Waterman's Ass'n v. Pruitt*,
  4 F.3d 264 (4th Cir. 1993) ........................................13, 30, 31, 34

*Toomer v. Witsell*,
  334 U.S. 385 (1948)................................ 12, 15, 16, 21, 31, 33, 34

*United Building & Construction Trades Council of Camden County &
  Vicinity v. Mayor & Council of Camden*,
  465 U.S. 208 (1984).........................................................16, 21, 29

v

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Management*
 *Authority*,
  550 U.S. 330 (2007)........................................................................14, 43

*Waste Management Holdings, Inc. v. Gilmore*,
 252 F.3d 316 (4th Cir. 2001) .......................................................38

*Wyoming v. Oklahoma*,
 502 U.S. 437 (1992)..............................................................36, 38, 41

*Yamaha Motor Corp., USA v. Jim's Motorcycle, Inc.*,
 401 F.3d 560 (4th Cir. 2005) .......................................................37

## CONSTITUTION AND STATUTES

U.S. Const. art. I, § 5, cl. 3 ...........................................................25

28 U.S.C. § 1291 ...........................................................................1

28 U.S.C. § 1331 ...........................................................................1

42 U.S.C. § 1983 ...........................................................................2

Va. Code Ann. §§ 2.2-3700 *et seq.* ..............................................2

Va. Code Ann. § 2.2-3700(B)...........................................29, 32, 41

Va. Code Ann. § 2.2-3704(A)...........................................2, 10, 14, 38

Va. Code Ann. § 2.2-3704(F) ............................................35, 42

## LEGISLATIVE MATERIALS

112 Cong. Rec. 13,007 (1966)........................................................24, 25

H.R. Rep. 89-1497 (1966)...............................................................24

S. Rep. No. 89-813 (1965) ..............................................................26

# OTHER SOURCES

*Meeting Summary of the Rights and Remedies Subcommittee of the Virginia Freedom of Information Act Advisory Council* (July 22, 2010),
http://leg2.state.va.us/dls/h&sdocs.nsf/By+Year/HD152010/
$file/HD15.pdf ...............................................................................34

Judy Nadler & Miriam Schulman, *Open Meetings, Open Records, and Transparency in Government* (Mar. 2006),
http://www.scu.edu/ethics/practicing/focusareas/government_ethics/
introduction/open-meetings.html .................................................25

Research and Retrieval Services, Inc. (last visited Mar. 15, 2011),
http://www.researchandretrievals.com .........................................39

Virginia Department of Social Services, Child Support Facts and Statistics,
http://www.dss.virginia.gov/files/about/reports/children/child_support/
statistical_resources/statistics_2009.pdf......................................27

Virginia Division of Child Support Enforcement, Child Support Arrearages: A Legal, Procedural, Demographic, and Caseload Analysis,
http://www.dss.virginia.gov/files/about/reports/children/child_support/
2004/arrearages.pdf.....................................................................27

# JURISDICTIONAL STATEMENT

Plaintiffs Mark J. McBurney and Robert W. Hurlbert filed this § 1983 action in the United States District Court for the Eastern District of Virginia to require the Defendants—Virginia's Director of Child Support Enforcement and the Director of the Real Estate Assessment Division of Henrico County, Virginia—to process their Virginia Freedom of Information Act requests that had been denied because McBurney and Hurlbert are not Virginia citizens. Plaintiffs also sought a declaration that the Virginia Freedom of Information Act's discrimination against noncitizens of Virginia violates their rights under the Privileges and Immunities Clause and dormant Commerce Clause of the United States Constitution. The district court had subject matter jurisdiction under 28 U.S.C. § 1331.

The district court's January 21, 2011 order granted the separate Cross-Motions for Summary Judgment of Defendant Young and Defendant Little and denied Plaintiffs' Cross-Motion for Summary Judgment. That order disposed of all claims of all parties. Plaintiffs filed a notice of appeal on January 28, 2011 and an amended notice of appeal on February 1, 2011. This Court has jurisdiction under 28 U.S.C. § 1291.

1

## STATEMENT OF ISSUES

1.     Does the citizens-only provision of the Virginia Freedom of Information Act violate the Privileges and Immunities Clause of Article IV of the United States Constitution?

2.     Does the citizens-only provision of the Virginia Freedom of Information Act violate the dormant Commerce Clause of the United States Constitution?

## STATEMENT OF THE CASE

This appeal arises out of an action by Mark J. McBurney, Roger W. Hurlbert, and Bonnie E. Stewart challenging the constitutionality of Virginia's Freedom of Information Act (VFOIA), Va. Code Ann. §§ 2.2-3700 *et seq.* (2008), insofar as it limits access to public records in Virginia to "citizens of the Commonwealth." *Id.* § 2.2-3704(A). As the Third Circuit held with respect to an analogous Delaware statute, a state law limiting freedom of information requests to in-state citizens violates the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution. *See Lee v. Minner*, 458 F.3d 194, 201 (3d Cir. 2006). VFOIA's citizens-only provision also violates the Constitution's dormant Commerce Clause as to Hurlbert.[1]

On January 21, 2009, McBurney and Hurlbert filed a complaint under 42 U.S.C. § 1983 for declaratory and injunctive relief against the Attorney General of

---

[1] Relevant portions of VFOIA are contained in the addendum to this brief.

2

the Commonwealth of Virginia; Nathaniel L. Young, Deputy Commissioner and Director of the Virginia Division of Child Support Enforcement (DCSE); and Samuel A. Davis, Director of the Real Estate Assessor's Office in Henrico County, Virginia. JA 3A. Stewart was added as a plaintiff on April 7, 2009. *Id.* at 5A.[2]

On February 13, 2009, the Virginia state defendants moved to dismiss, asserting that McBurney lacked standing. Doc. 5, at 1–2. The county defendant also moved to dismiss, arguing that Hurlbert lacked standing. Doc. 21, at 6.

On May 1, 2009, the district court granted Defendants' motions to dismiss, determining that both McBurney and Hurlbert lacked standing. *McBurney v. Mims*, No. 3:09-CV-44, 2009 WL 1209037, at *5–6 (E.D. Va. May 1, 2009). Despite its no-standing holding, the court addressed the merits of Hurlbert's constitutional claims, summarily finding that the statute violated neither the Privileges and Immunities Clause nor the dormant Commerce Clause. *Id.* at *6–7.

On appeal, this Court affirmed in part, reversed in part, and remanded to the district court. *McBurney v. Cuccinelli*, 616 F.3d 393, 404–05 (4th Cir. 2010). The Court reversed unanimously as to McBurney's standing, finding that McBurney pled Article III standing because his complaint alleged that he requested documents related to DCSE's policies about out-of-state child support claims that

---

[2] The district court's dismissal of Stewart's claim against the Virginia Attorney General was affirmed by this Court in the first appeal in this case, *McBurney v. Cuccinelli*, 616 F.3d 393, 402 (4th Cir. 2010), and that claim is no longer at issue.

3

he had not received. *Id.* at 403. Turning to Hurlbert's standing, the Court found that he had pled an ongoing injury because the complaint alleged that the citizens-only provision "makes it impossible" for Hurlbert, who operates a business in which he retrieves records from state governments on behalf of clients, to "pursue his common calling by obtaining Virginia public records through the VFOIA on an equal basis with Virginia's citizens." *Id.* at 403−04. The Court remanded the case to the district court for further proceedings. *Id.* at 404−05. Judge Agee dissented as to Hurlbert's standing. *Id.* at 407 (Agee, J., concurring in part and dissenting in part).

Although the Court declined to reach the merits of the case, Judge Gregory addressed the district court's summary opinion on Hurlbert's Privileges & Immunities claim. *Id.* at 405 (Gregory, J., concurring). Judge Gregory concluded that the facts alleged by Hurlbert make out a "classic common-calling claim under the Privileges and Immunities Clause." *Id.* at 406. He pointed out that, in the modern era, the ability to "quickly and efficiently gather and disseminate information is central to a great deal of economic activity," and, thus, a statute such as VFOIA's citizens-only provision, which "discriminates against a nonresident's ability to access information" implicates the right to pursue a common calling and must "withstand[] heightened scrutiny" to be upheld. *Id.* at 406–07. A failure by the district court to analyze the citizens-only provision with such heightened

4

scrutiny, Judge Gregory concluded, would result in reversible legal error. *Id.* at 407.

On remand, the parties cross-moved for summary judgment on the merits of the constitutional claims. JA 6A−7A. The County also continued to argue that Hurlbert lacks standing. Doc. 53, at 6−9.

On January 21, 2011, the district court granted Defendants' cross-motions for summary judgment. JA 102A. Citing this Court's opinion, the district court found that Hurlbert has standing because the complaint pleads sufficient injury and that Hurlbert can show causation and redressability. *Id.* at 108A−109A.

Turning to the merits, the court held that VFOIA does not violate the Privileges & Immunities or dormant Commerce Clauses. First, the court reasoned that the citizens-only provision does not impermissibly burden Hurlbert's right to pursue his common calling under the Privileges and Immunities Clause. *Id.* at 110A−111A. The court recognized that Hurlbert's business of requesting and retrieving records from state governments constitutes a common calling within the meaning of the Clause. *Id.* at 111A. Though it is undisputed that the citizens-only provision bars Hurlbert from practicing his records retrieval business in Virginia, the court found that "[d]enying Hurlbert access to public records does not . . . interfere with his common calling" because the effects on his ability to practice his common calling in Virginia are "merely incidental." *Id.* The court did not cite to

5

any authority in support of its "merely incidental" standard, nor did it explain why Hurlbert's records retrieval business is only incidentally affected by a state statute that completely bars him from conducting that business in Virginia. *Id.*

Next, the district court held that there is no fundamental right of access to information for purposes of the Privileges and Immunities Clause. *Id.* at 113A. Reasoning that because modern freedom of information laws were codified relatively recently, the court found that the right of access to information cannot be considered fundamental. *Id.* The court then concluded that the Third Circuit's ruling in *Lee v. Minner*, 458 F.3d at 194, was inapplicable. JA 113A–114A. The court construed *Lee* to find only a narrow fundamental right to "engage in the political process with respect to matters of national political and economic importance." *Id.* at 113A. The court did not address *Lee*'s holding that the right of "access to public records" is fundamental under the Privileges and Immunities Clause and underpins "effective participation in democracy." 458 F.3d at 200.

The court concluded that the right of access to courts was not violated by VFOIA because the documents requested would be available to McBurney via discovery if he were in litigation over his child support claim. JA 114A. It then held that the rights of self-advocacy and pursuit of economic interests are not fundamental because such interests are not vital to the nation as a single entity. *Id.* at 116A.

6

Finally, the court summarily rejected Hurlbert's dormant Commerce Clause claim. *Id.* at 119A−120A. The court relied on the *Pike* balancing test as articulated in *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978), used to evaluate statutes that, unlike VFOIA's citizens-only provision, are not facially discriminatory. JA 119A−120A.

## STATEMENT OF FACTS

**A.     McBurney**

Mark J. McBurney was a citizen of Virginia for thirteen years from 1987 to 2000. JA 33A. McBurney retained his citizenship and paid Virginia taxes even when he lived abroad as a foreign service officer with the State Department. *Id.* During this time, McBurney married Lore Ethel Mills, and they had a son, Cal. *Id.* When the couple divorced in 2002, the court awarded custody of Cal to Mills. *Id.* McBurney was ordered to pay child support. *Id.*

In March 2006, McBurney and Mills privately agreed that Cal would live with McBurney in Australia and that Mills would pay child support. *Id.* at 34A. When Mills defaulted on the agreement, McBurney, still in Australia, filed a child support application with DCSE. *Id.* Because he was living out of the country, McBurney elected to have DCSE file the petition for child support on his behalf. *Id.* Although DCSE told McBurney that his petition had been filed on August 23, 2006, DCSE failed to file the petition in the proper Virginia court until April 2007.

7

*Id.* at 34A–35A. As a result, the Virginia court established April 1, 2007 as the date on which Mills's child support obligation commenced, denying McBurney nearly nine months of child support payments. *Id.* at 35A.

McBurney believes that DCSE mishandled his petition for child support and that it possesses documents that will help him resolve the issues surrounding the botched filing of his petition. *Id.* at 34A, 37A–38A. McBurney submitted a VFOIA request to DCSE asking for records pertaining to him, his son, Mills, or his application for child support. *Id.* at 36A, 39–41A. McBurney also requested non-personal documents such as treatises, statutes, legislation, regulations, administrative guidelines, and other reference material that DCSE relies on in processing child support cases when a parent is overseas. *Id.* at 40A.

McBurney sent his first request by letter in April 2008 from his new residence in Rhode Island. *Id.* at 36A, 39A, 41A. DCSE promptly denied his request on the ground that portions of the requested information were confidential under Virginia law and that McBurney was not entitled to any remaining non-confidential information because he was "not a Citizen of Commonwealth of Virginia." *Id.* at 36A, 42A. Shortly thereafter, McBurney submitted a second request from an Alexandria, Virginia address. *Id.* at 36A, 43A–44A. DCSE again denied his request, explaining that "[o]ur records indicate that you are not a citizen of the Commonwealth of Virginia. Therefore, you are not eligible to obtain

8

information under the Virginia Freedom of Information Act." *Id.* at 36A, 45A.
McBurney was instructed that he may be able to obtain personal documents under
Virginia's Government Data Collection and Dissemination Practices Act, which
permits citizens and noncitizens alike to access certain "personal information"
maintained by DCSE. *Id.* at 36A–37A, 45A.

Although McBurney received documents under the Data Collection and
Dissemination Practices Act, there are some documents responsive to his VFOIA
request, such as the treatises, statutes, and regulations that the DCSE relied on in
making certain decisions related to his petition, that he did not and could not
receive under the Data Collection and Dissemination Practices Act. *Id.* at 37A.
McBurney intends to use the information he requested to advocate for his interests
and to determine if there is any avenue for him to recover the nine months of child
support he was denied. *Id.* at 37A–38A.

**B.    Hurlbert**

Roger W. Hurlbert operates Sage Information Services (Sage) from
California. *Id.* at 46A. This business is Hurlbert's livelihood. *Id.* at 93A–94A.
Clients hire Sage to obtain public documents from real property assessment
officials throughout the United States. *Id.* at 47A. Accordingly, Hurlbert requests
documents from public agencies across the country, including in Virginia. *Id.* at
46A. Because acquiring these documents is central to Sage's mission, state

9

freedom of information statutes play an essential role in enabling Hurlbert to conduct his business and earn his livelihood. *Id.* at 47A.

In June 2008, Sage was hired to obtain public records from the Real Estate Assessor's Office of Henrico County, Virginia. *Id.* When Hurlbert attempted to obtain these records, his request was denied on the ground that, under VFOIA, Va. Code Ann. § 2.2-3704(A), only Virginia citizens are entitled to the records. JA 47A. Eight months after his VFOIA request, and nearly a month after this case was filed, Henrico County provided Hurlbert's counsel with an electronic copy of the requested information, which Hurlbert returned because it was no longer useful to his client. *Id.* at 51A.

Because of VFOIA's citizens-only provision, Hurlbert no longer conducts business in Virginia. Although Hurlbert's clients have informed him that they would be interested in obtaining records from Virginia, Hurlbert advised his clients that he is "refusing Virginia business" because of VFOIA's citizens-only provision. *Id.* at 95A–98A. Hurlbert had submitted at least fifteen records requests to Virginia localities in the first part of 2008, but has not attempted to request records from any Virginia locality since being rebuffed by Henrico County in June 2008. *Id.* at 96A. If VFOIA is declared unconstitutional, Hurlbert anticipates that his clients will hire him to obtain records from Virginia public bodies. *Id.* at 101A.

10

## SUMMARY OF THE ARGUMENT

VFOIA discriminates against noncitizens' ability to access public records and thus impermissibly burdens fundamental rights protected under Article IV's Privileges and Immunities Clause. VFOIA also erects impermissible barriers to interstate commerce in violation of the dormant Commerce Clause. Therefore, the district court erred in holding that VFOIA's citizens-only provision violates neither clause.

1.      VFOIA's citizens-only provision impermissibly burdens Hurlbert's fundamental right under the Privileges and Immunities Clause to pursue his common calling in Virginia. The district court correctly recognized that Hurlbert's records retrieval business constitutes a common calling. Thus, the citizens-only provision violates the Privileges and Immunities Clause because it completely bars Hurlbert from pursuing his common calling in Virginia. However, the district court held that the citizens-only provision does not violate the Clause because the effects on Hurlbert's business are "merely incidental." The district court cited no authority for its "merely incidental" test and, regardless, erred in determining that a statute that totally bars Hurlbert from practicing his business in Virginia has only "incidental" effects on that business.

2.      VFOIA also impermissibly burdens the right of access to information, which is a fundamental right protected by the Privileges and Immunities Clause.

11

*Lee v. Minner*, 458 F.3d 194, 200 (3d Cir. 2006). The court in *Lee* found that the right of "access to public records" is fundamental because it underpins activities essential to the promotion of democratic values for all citizens. *Id.* at 199–200. Despite this holding, the district court construed *Lee* narrowly to find only a right of political advocacy for journalists writing on issues of national importance.

VFOIA also unconstitutionally interferes with McBurney's ability to advocate on behalf of himself and others on an issue of national importance, the processing of out-of-state child support claims. The district court, in determining that McBurney is only interested in the documents for his personal benefit, ignored that he has requested general policy documents relied on by DCSE that affect other similarly situated out-of-state parents.

The citizens-only provision also impermissibly burdens Plaintiffs' right of equal access to courts and ability to pursue economic interests.

3.      Because VFOIA's citizens-only provision impermissibly burdens fundamental rights under the Privileges and Immunities Clause, the provision is unconstitutional unless Virginia demonstrates a substantial reason for the discrimination that bears a substantial relationship to the state's objective and that the discrimination is tailored to address an evil peculiar to non-Virginians. *Toomer v. Witsell*, 334 U.S. 385, 398 (1948). The state's proffered justifications for VFOIA's discrimination do not meet this high standard. Although the goals of

12

enabling citizens to hold elected officials accountable and keeping Virginia

citizens informed may be substantial goals, the citizens-only provision does

nothing to further either of these goals and, in fact, undermines them. Furthermore,

the defendants have failed to offer any of the evidence required to substantiate their

claim that allowing noncitizens access to public records will increase

administrative burdens on the state. *See Tangier Sound Waterman's Ass'n v. Pruitt*,

4 F.3d 264, 267 (4th Cir. 1993).

4.    VFOIA's citizens-only provision also violates the dormant Commerce

Clause as to Hurlbert because it erects an impermissible barrier to interstate

commerce. VFOIA is a discriminatory statute that gives Virginia citizens access to

a local resource—public records—while explicitly excluding noncitizens. As a

result, the provision favors in-state interests by giving in-state businesses similar to

Hurlbert's access to a market—clients seeking records from Virginia localities—

that Hurlbert and other noncitizens cannot serve. Because it is discriminatory on its

face and in effect, VFOIA's citizens-only provision is "virtually *per se* invalid"

unless the state can demonstrate that it advances a "legitimate local purpose that

cannot be adequately served by reasonable nondiscriminatory alternatives." *Or.

Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99–101 (1994). The

district court erred by relying on the *Pike* balancing test, which is reserved for

13

evaluating evenhanded statutes. In any event, there are no countervailing legitimate concerns to justify limiting access to public records in Virginia.

Nor is the citizens-only provision saved by the fact that the maintenance and provision of public records is a government function. Although local governments may discriminate in favor of local *public* entities, they may not discriminate in favor of local *private* entities over non-local private entities. *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 334 (2007). VFOIA's citizens-only provision does not favor local public entities, but rather discriminates in favor of local private records retrieval businesses over similar non-local private businesses, such as Hurlbert's, and thus violates the dormant Commerce Clause.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. *Shipbuilders Council of Am. v. U.S. Coast Guard*, 578 F.3d 234, 243 (4th Cir. 2009).

## ARGUMENT

### I. VFOIA'S CITIZENS-ONLY PROVISION IS UNCONSTITUTIONAL UNDER ARTICLE IV'S PRIVILEGES AND IMMUNITIES CLAUSE.

VFOIA's citizens-only provision, which provides that only Virginia citizens are entitled to access public records, Va. Code Ann. § 2.2-3704(A), violates

14

Plaintiffs' rights under Article IV's Privileges and Immunities Clause because it discriminates against out-of-state requesters.

Article IV, Section 2, clause 1 of the U.S. Constitution provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." The Clause was intended to "fuse into one Nation a collection of independent, sovereign States," *Toomer v. Witsell*, 334 U.S. 385, 395 (1948), by "plac[ing] the citizens of each State upon the same footing with citizens of other States," *Hicklin v. Orbeck*, 437 U.S. 518, 524 (1978) (quoting *Paul v. Virginia*, 75 U.S. 168, 180 (1868)). The Clause protects rights that are fundamental to the promotion of interstate harmony, *Sup. Ct. of N.H. v. Piper*, 470 U.S. 274, 279–80 (1985), by relieving noncitizens "from the disabilities of alienage in other States," and "inhibit[ing] discriminating legislation against them by other States," *Hicklin*, 437 U.S. at 524; *see also McBurney v. Cuccinelli*, 616 F.3d 393, 405 (4th Cir. 2010) (Gregory, J., concurring). To determine whether a state has discriminated in violation of the Privileges and Immunities Clause, a court must determine whether (1) the discriminatory practice burdens a right protected under the Privileges and Immunities Clause; (2) the state has a substantial justification for the practice; and (3) the practice bears a substantial relationship to the state's justification. *Piper*, 470 U.S. at 284; *Toomer*, 334 U.S. at 396.

### A.    VFOIA Burdens Hurlbert's Right to Pursue a Common Calling.

VFOIA's citizens-only provision impermissibly burdens Hurlbert's right to pursue a common calling, which is "the most fundamental of those privileges" protected by Article IV. *United Bldg. & Constr. Trades Council of Camden Cnty. & Vicinity v. Mayor & Council of Camden*, 465 U.S. 208, 219 (1984). It is well established that the Clause guarantees that "citizens of State A" may do "business in State B on terms of substantial equality with citizens of that State." *Toomer*, 334 U.S. at 396. Accordingly, a state's interest "must yield" when, without substantial reason, "it interferes with a nonresident's right to pursue a livelihood in a State other than his own, a right that is protected by the Privileges and Immunities Clause." *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 386 (1978).

The citizens-only provision is similar to statutes that have been struck down for impermissibly interfering with the right of out-of-state citizens to pursue their common callings on the same terms as state citizens. *Toomer* invalidated a South Carolina statute requiring nonresidents to pay licensing fees for shrimp boats 100 times greater than the licensing fees paid by residents. 334 U.S. at 403. Calling the provision "virtually exclusionary," the Supreme Court explained that the statute impermissibly interfered with the ability of the out-of-state plaintiffs to pursue their common calling of commercial fishing. *Id.* at 397, 403. Although South Carolina was attempting to preserve the local shrimp supply, the Court held the

16

law invalid because it impeded the plaintiff's attempts to pursue a common calling in that state. By contrast, in *Baldwin*, the Supreme Court held that Montana's restrictions on out-of-state elk hunters did not interfere with a fundamental right. 436 U.S. at 388. The Court emphasized that no common calling was involved: Elk hunting is "a recreation and a sport" and "not a means to the nonresident's livelihood." *Id.*

This case resembles *Toomer* rather than *Baldwin*. Like the licensing fees at issue in *Toomer*, VFOIA precludes Hurlbert from practicing his common calling within the state. The district court agreed, finding that "Hurlbert does engage in a common calling within the meaning of the Privileges and Immunities Clause" because "Hurlbert makes a living by requesting records on behalf of clients." JA 111A; *see also McBurney*, 616 F.3d 393 at 406 ("[Hurlbert's] allegations, if true, make out a classic common-calling claim under the Privileges and Immunities Clause.") (Gregory, J., concurring). Hurlbert's clients pay him to retrieve public records because of his proven ability to quickly and efficiently obtain records on their behalf. JA 46A. However, because of VFOIA's citizens-only provision, Hurlbert cannot practice his trade in Virginia and consequently refuses Virginia business. *Id.* at 95A–98A. The citizens-only provision, therefore, is even more discriminatory than the licensing fee provision in *Toomer*. Whereas the scheme in *Toomer* imposed substantially higher costs on out-of-state citizens, the citizens-

17

only provision categorically bars out-of-state citizens. Thus, VFOIA's citizens-only provision impermissibly burdens Hurlbert's ability to pursue his common calling and "triggers heightened judicial scrutiny." *McBurney*, 616 F.3d at 405 (Gregory, J., concurring).

The district court held that even though Hurlbert's records retrieval business is a common calling, VFOIA does not interfere with the pursuit of his livelihood. JA 111A. The district court reasoned that VFOIA is not a direct regulation of business and its effect on Hurlbert's practice is "merely incidental." *Id.* The district court cited no authority for its reasoning, and there is none. Whether a law directly regulates business is not germane to the Privileges and Immunities Clause analysis, and the degree of VFOIA's interference with Hurlbert's common calling is likewise irrelevant. In any event, the citizens-only provision's interference with Hurlbert's business is not incidental.

First, that VFOIA does not directly regulate business does not mean that it cannot impermissibly burden a noncitizen's common calling. Interference with a common calling is not restricted to situations in which the state overtly aims to provide a competitive advantage to its own citizens over noncitizens. *McBurney*, 616 F.3d at 406 (Gregory, J., concurring). Indeed, a state's purpose in enacting a law, although relevant in determining whether the law's burden on noncitizens is justified, is not relevant in determining whether that law imposes a burden on a

18

noncitizen's common calling in the first place. *Id.* Accordingly, the adverse effects on Hurlbert's pursuit of his common calling are paramount, and the Virginia legislature's purpose in enacting the citizens-only provision is irrelevant. Thus, because the legislature's purpose does not matter, whether or not the citizens-only provision's adverse effects on non-citizens such as Hurlbert were unforeseen is likewise irrelevant.

Second, the district court erred in finding that VFOIA's citizens-only provision did not violate the Privileges and Immunities Clause because it has "merely incidental" effects on Hurlbert's common calling. JA 111A. The district court cited no authority for this standard, and whether the effects are "merely incidental" is irrelevant. The Privileges and Immunities Clause demands that a state sufficiently justify *any* burden it imposes on an individual's fundamental rights "without regard to the burden's severity or degree." *McBurney,* 616 F.3d at 406 (Gregory, J., concurring). Thus, as long as VFOIA interferes with Hurlbert's common calling, the burden shifts to Defendants to justify the discrimination. *Id.* at 405. ("[A] state's attempt to burden a right protected by the Privileges and Immunities Clause triggers heightened judicial scrutiny.").

Finally, even if the burden's severity were germane, VFOIA's interference with Hurlbert's common calling is significant—not, to use the district court's term, "merely incidental"—because it completely bars him from pursuing his trade in

Virginia. As a result, Hurlbert refuses Virginia business from his clients. JA 95A, 97A.

This Court held that a West Virginia rule providing that only in-state lawyers who maintain an in-state office may sponsor pro hac vice motions did not offend the Privileges and Immunities Clause because "sponsorship of pro hac vice applicants is not a fundamental component of the right to practice law." *Parnell v. Sup. Ct. of App. of W. Va.*, 110 F.3d 1077, 1081–82 (4th Cir. 1997). The plaintiff, who lived in Georgia, could still appear in West Virginia court as lead or co-counsel and perform the "essential tasks of a litigator." *Id.* Thus, the rule did not interfere with the plaintiff's common calling when it prohibited him from performing one discrete service that was, to put it charitably, at the periphery of his occupation. *Id.* By contrast, VFOIA prohibits Hurlbert from performing the "fundamental component" of his records retrieval business by barring him altogether from conducting business in the state.

Finally, although the district court did not explain what it meant by "merely incidental," the Privileges and Immunities Clause of Article IV does not tolerate discrimination by one state even when the plaintiff is free to practice his trade in many other states. *See, e.g.*, *Piper*, 470 U.S. at 288; *Hicklin*, 437 U.S. at 534. In analyzing state burdens on fundamental rights, the proper inquiry is not to consider one state's discrimination in isolation, but rather to consider "the prospect of other

20

states' responding with reciprocal and retaliatory burdens that, in the aggregate, could threaten the Nation's economic unity." *McBurney*, 616 F.3d at 406 (Gregory, J., concurring) (citing *Toomer*, 334 U.S. at 395–396); *see also United Bldg.*, 465 U.S. at 225. Plaintiffs do not anticipate that a large number of states, the vast majority of which currently honor FOIA requests from out-of-state citizens, will adopt citizens-only provisions. But, if Defendants' views were to prevail, then Hurlbert could be barred from practicing his business in all states other than his own, which is exactly the kind of provincialism that the Privileges and Immunities Clause was intended to prevent.

In sum, the citizens-only provision of VFOIA interferes with Hurlbert's pursuit of his common calling in Virginia, a right protected by the Privileges and Immunities Clause. The district court erred when, despite finding that the law burdens Hurlbert's fundamental right to pursue his common calling, it excused the discrimination on the ground that VFOIA is not a regulation of business and its interference is "merely incidental," when neither factor is relevant to the Privileges and Immunities analysis. Rather, because the citizens-only provision burdens a fundamental right, Defendants must demonstrate that the law advances important state interests in the least discriminatory manner.

21

### B.     VFOIA Burdens Several Other Privileges Guaranteed to Plaintiffs by the Privileges and Immunities Clause.

By discriminating against McBurney and Hurlbert based solely on their citizenship, VFOIA burdens several other interests fundamental to national unity. *See Piper*, 470 U.S. at 279–80. The Privileges and Immunities Clause protects not only economic interests, like the pursuit of one's common calling, *id.* at 281 n.11, but also non-economic interests like the right to travel, *Saenz v. Roe*, 526 U.S. 489, 501 (1999), receive medical treatment, *Doe v. Bolton*, 410 U.S. 179, 200 (1973), access state courts, *Canadian N. Ry. Co. v. Eggen*, 252 U.S. 553, 562 (1920), practice law, *Piper*, 470 U.S. at 281, equal tax treatment, *Austin v. New Hampshire*, 420 U.S. 656, 662 (1975), and access public records, *Lee v. Minner*, 458 F.3d 194 (3d Cir. 2006). Notably, the only circuit to have considered a similar citizens-only provision in a state freedom of information law held that the law infringed non-economic interests protected by the Privileges and Immunities Clause. *Id.* at 194; *see McBurney*, 616 F.3d at 406 (Gregory, J., concurring) (discussing *Lee*).

### 1.     VFOIA Implicates McBurney's and Hurlbert's Rights of Equal Access to Information and Political Advocacy.

**a.** Like the plaintiff in *Lee*, who successfully challenged the Delaware Freedom of Information Act's citizens-only provision, McBurney's and Hurlbert's rights of equal access to information are burdened by VFOIA. *See generally Lee*, 458 F.3d

22

194. The Third Circuit recognized that the Privileges and Immunities Clause

protects the right of access to information and that this right is essential to the

exercise of other important rights. *Id.* at 200. Like the citizens-only provision in

Delaware's FOIA, VFOIA directly burdens McBurney's and Hurlbert's ability to

obtain public records. VFOIA also burdens McBurney's and Hulbert's rights to

advocate for their interests on equal footing with Virginia citizens.  The court erred

in finding that no such right exists.

The Third Circuit found that "access to public records" is a fundamental

right that is essential to the promotion of democratic values. *See id.* at 199–200.

The court explained:

> Because political advocacy is an "essential activity" which "bear[s] upon the
> vitality of the Nation as a single entity," *Baldwin*, 436 U.S. at 387, 383, and
> because access to public records is necessary to the ability to engage in that
> activity, we conclude that access to public records is a right protected by the
> Privileges and Immunities Clause.

*Id.* at 200.

Despite this holding that access to public records is a fundamental right, the

district court construed *Lee* as finding a narrow right to "engage in the political

process with respect to matters of national political and economic importance." JA

113A. *Lee* reasoned, however, that because "[n]o state is an island[,] . . . events

which take place in an individual state may . . . have an impact upon policies of not

only the national government, but also of the states." 458 F.3d at 199–200. The

23

district court also attempted to limit *Lee* on the ground that it dealt with a "journalist who sought information in an attempt to write about matters of national importance." JA 113A. But the Third Circuit expressly declined to rule on whether the plaintiff was, in fact, a journalist (and thus potentially to decide the case on a common calling basis), instead holding that access to public records—by the public, not just by journalists—was fundamental, and thus protected by the Privileges and Immunities Clause. *Lee*, 458 F.3d at 198–99.

The district court also found that because modern freedom of information statutes were not enacted until the mid-twentieth century, it is "clear" that a right to information is not fundamental. 113A. However, even though statutes expressly granting a broad right of access to information are of relatively recent vintage, legislators did not create such a right out of whole cloth. Congress's purpose in passing the federal Freedom of Information Act (FOIA) was to "insure a fundamental political right." 112 Cong. Rec. 13,007 (1966) (statement of Rep. Benjamin Rosenthal).

In passing the federal FOIA, Congress saw it as a "political truism" that "[a] democratic society requires an informed, intelligent electorate, and the intelligence of the electorate varies as the quantity and quality of its information varies." H.R. Rep. 89-1497, at 12 (1966). Thus, it was not believed that FOIA created a new right, but rather "simply attempt[ed] to enforce a basic public right—the right to

24

access to Government information." 112 Cong. Rec. 13,007 (1966) (statement of Rep. John Moss).

Congress looked to the First Amendment's guarantees of free speech and free press—which date, of course, to the 18th century—as evidence that "[o]ur Constitution recognized [the] need" to "remove injustifiable barriers to information." *Id.* In granting such rights, the framers "could not have intended to give us empty rights," and "[i]nherent in the right of free speech and of free press is the right to know." *Id.* Thus, Congress saw FOIA as "strengthen[ing] those rights." *Id.* Furthermore, that public access to government information was in the minds of the framers is evident in the Journal Clause of Article I of the U.S. Constitution, which provides that "[e]ach House shall keep a Journal of its Proceedings, and from time to time publish the same," U.S. Const. art. I, § 5, cl. 3, and the right of citizens to "petition the Government for a redress of grievances" guaranteed by the First Amendment.

In any event, the fact that every state and the federal government has an open government or sunshine law is, in fact, evidence the states and federal government have deemed access to public records fundamental.[3] Legislators, in passing federal FOIA, recognized that the increasing "vastness of our Government

---

[3] *See* Judy Nadler & Miriam Schulman, *Open Meetings, Open Records, and Transparency in Government* (Mar. 2006), http://www.scu.edu/ethics/practicing/ focusareas/government_ethics/introduction/open-meetings.html.

and its myriad of agencies" in the modern era made the right of access to information increasingly vulnerable and thus underscored the "importance of having an information policy of full disclosure." S. Rep. No. 89-813, at 3 (1965). The prevalence of open government laws reflects the increasing importance of access to public records in the information age. *See McBurney*, 616 F.3d at 406–07. (Gregory, J., concurring).

**b.** VFOIA also burdens McBurney's ability to advocate for his interests and the interests of others similarly situated. The Third Circuit in *Lee* explained that political advocacy regarding matters of national interest is vital to the vindication of "individual and societal rights." 458 F.3d at 199–200. Restricting a noncitizen's access to public information based solely on citizenship in itself burdens a right under the Privileges and Immunities Clause. *Id.* at 200. Here, the court erred in finding that no such fundamental right exists. JA 113A.

In an attempt to distinguish this case from *Lee*, the court determined that the plaintiffs sought the requested documents only for "personal benefit" and, therefore, that no issue of "national importance" was implicated. *Id.* at 113A. But McBurney did not only request documents pertaining to his own child support case, but also sought "treaties, statutes, legislation, regulations, administrative guidelines or any other reference material that the [Department of Social Services] and/or DCSE relies upon in actioning or administering child support cases where

26

one parent is overseas." *Id.* at 44A. The policies of a state agency charged with protecting the interests of nonresidents in enforcing their child support agreements, particularly those policies pertaining to the agency's processing of out-of-state child support claims, are nationally important. Like McBurney, many custodial parents with Virginia-based custody orders seek enforcement from outside Virginia. *See* Virginia Division of Child Support Enforcement, Child Support Arrearages: A Legal, Procedural, Demographic, and Caseload Analysis 52–53, available at http://www.dss.virginia.gov/files/about/reports/children/child_support/ 2004/arrearages.pdf (only 74% of Virginia DCSE cases are in-state). Virginia's DCSE alone oversees around $630 million annually in child support payments and, in 2009, pursued $2.5 billion in outstanding child support. Virginia Dep't of Social Services, Child Support Facts and Statistics, http://www.dss.virginia.gov/files/ about/reports/children/child_support/statistical_resources/statistics_2009.pdf.

By excluding non-Virginians from accessing public information about how their claims are handled by DCSE, VFOIA impermissibly undermines noncitizens' ability to understand how DCSE handles their claims and to advocate for policy changes that could directly affect their children's and other children's child support rights. More importantly, VFOIA places a special burden on McBurney's ability to take part in an interstate dialogue regarding state child support practices that directly affect his life and income, as well as the life and income of others.

27

Denying McBurney access to the general policy documents that guide DCSE's processing of child support claims for out-of-state parents inhibits his ability to advocate effectively for changes that will improve DCSE's system both for himself and others similarly situated. The Privileges and Immunities Clause compels Virginia to treat its citizens and noncitizens substantially alike; if Virginia provides citizens access to public information to advocate for their interests, it must do the same for noncitizens.

> ### 2.      VFOIA Implicates McBurney's and Hurlbert's Right of Equal Access to Courts.

VFOIA also burdens Plaintiffs' right of equal access to courts, which is a fundamental right protected by the Privileges and Immunities Clause. *Blake v. McClung*, 172 U.S. 239, 249 (1898). When the right of access to the courts "is concerned, 'meaningful access . . . is the touchstone.'" *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 823 (1977)).

Access to information is an important aspect of gaining meaningful access to the courts. *Bounds*, 430 U.S. 817. *Bounds* held that the right of meaningful access to courts required that prison officials provide inmates with assistance in the "preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. As in *Bounds*, VFOIA denies noncitizens access to public records needed to prepare and file meaningful legal papers in suits against Virginia public officials.

28

Although VFOIA does not give a direct in-court advantage to citizens, it disadvantages noncitizens in suits against Virginia public officials by limiting a noncitizen's ability to discover when and where a legal wrong may have occurred. *See also Blake*, 172 U.S. 239 (striking down a Tennessee statute giving preference to resident unsecured creditors over nonresident unsecured creditors in bankruptcy proceedings).

In McBurney's case, because he is denied access to documents about DCSE's child support enforcement policies, particularly those pertaining to the processing of out-of-state child support claims, McBurney is unable to effectively evaluate the validity and strength of his potential legal claims against the Department regarding enforcement of his child support agreement. This scheme allows Virginia officials to control access to public information that may expose their own wrongdoing and to operate under a veil of darkness that freedom of information laws are meant to illuminate. *See* Va. Code Ann. § 2.2-3700(B). The district court erred in determining that Plaintiffs' access to courts is not burdened by VFOIA. JA 114A.

### 3. VFOIA Implicates McBurney's and Hurlbert's Ability to Pursue Their Economic Interests.

VFOIA burdens McBurney's and Hurlbert's ability to pursue their economic interests on equal footing with Virginia residents, a fundamental privilege protected by the Privileges and Immunities Clause. *United Bldg.*, 465 U.S. at 219.

29

Essential to this privilege is the ability to investigate and adequately assess potential claims against government agencies with which one interacts. The decision to file suit against a party or pursue other means of advocacy is a business decision that implicates one's ability to protect and earn income.

The district court erred in finding that the right to pursue economic interests is not fundamental under the Privileges and Immunities Clause. JA 116A. In *Tangier Sound Waterman's Ass'n v. Pruitt*, this Court held that Virginia could not charge the equivalent of a special nonresident tax for access to state resources without substantial justification. 4 F.3d 264, 268 (4th Cir. 1993). Here, McBurney is seeking to recover nine months of lost child support payments that, absent DCSE's mishandling of his case, he would have recovered earlier. As in *Tangier Sound*, McBurney—and any other non-Virginian seeking public information for economic purposes—has been and will be charged the equivalent of a nonresident tax or fee for access to government documents essential to his ability to obtain compensation for DCSE's failure to properly handle his child support claim. Although not a direct tax or fee as in *Tangier Sound*, by erecting a legal barrier to access information, Virginia is forcing McBurney either to abandon entirely his attempt to obtain information or to incur extra costs, such as the cost of hiring a

30

Virginia citizen to request documents, to obtain that information, information that is readily available to Virginians.[4]

### C.    VFOIA's Citizens-Only Provision Lacks a Valid Justification.

Because VFOIA burdens fundamental rights under the Privileges and Immunities Clause, it is unconstitutional unless Virginia can demonstrate a substantial reason for the discrimination that bears a substantial relationship to the state's objective and that the discrimination is tailored to address an evil peculiar to non-Virginians. *Toomer*, 334 U.S. at 398; *Tangier Sound*, 4 F.3d at 266–67. The Supreme Court has recognized very few substantial reasons for state-sponsored discrimination against citizens of other states.

Defendants have repeatedly insisted that VFOIA's citizens-only provision advances the statute's purpose of enabling citizens of Virginia to hold their elected officials accountable. *See, e.g.*, Doc. 55, at 9; Doc. 53, at 16. Although this is a substantial state interest, withholding public records from non-Virginia citizens does nothing to advance that interest because Virginia citizens would not be prevented from accessing records about their elected officials simply because noncitizens are allowed to access them. Indeed, although the Third Circuit accepted Delaware's claims that "defin[ing] the political community and

---

[4] VFOIA also burdens Hurlbert's ability to pursue his economic interests for the reasons discussed in Section I.A regarding his common calling.

31

strengthen[ing] the bond between citizens and their government" were substantial government interests, it held that the citizens-only provision did not bear a substantial relationship to these goals. *Lee*, 458 F.3d at 200–01. Virginia citizens will be rendered no less able than they are at present to hold their elected officials accountable if noncitizens are allowed to access public documents. Furthermore, McBurney is actually trying to hold a state agency accountable for its mishandling of his claim by attempting to obtain documents about DCSE's handling of out-of-state child support claims. Denying these documents to McBurney would deny him the ability to hold accountable an agency whose actions have had serious adverse effects on his life and the life of his child. Thus, denying documents to McBurney on the basis of his citizenship would, in fact, undermine Virginia's accountability goal.

Restricting access to public records also does not advance VFOIA's goal of keeping Virginia citizens informed. VFOIA was enacted to ensure that "[t]he affairs of government are not . . . conducted in an atmosphere of secrecy" and "to promote an increased awareness by *all* persons of governmental activities." Va. Code Ann. § 2.2-3700(B) (emphasis added). Restricting disclosures to exclude non-Virginians does not keep Virginians informed. If anything, wider dissemination of public records, to citizens and noncitizens alike, facilitates a more informed Virginia citizenry, leading to more accountability by public officials: The

32

more people who have information, the more likely that the information will be brought to the public's attention. A non-Virginian's ability to obtain public information does not foreclose a Virginian's access to public documents and might even make that Virginian better informed.

Defendants have also maintained that reducing state administrative costs is a substantial justification for VFOIA's discrimination against noncitizens. *See, e.g.*, Doc. 55, at 9–10; Doc. 53, at 16–17. However, Defendants have offered no authority for the claim that reduction of administrative costs is a substantial state interest sufficient to justify discrimination against noncitizens. In any event, excluding noncitizens from obtaining public documents is not closely tailored to this goal. "[S]omething more is required than bald assertion to establish a reasonable relation" between a discriminatory policy and increased administrative burden on the state. *Mullaney v. Anderson*, 342 U.S. 415, 418 (1952). Thus, Defendants bear the heavy burden of proving that an appreciably increased administrative burden exists as a result of responding to noncitizens' FOIA requests and that the citizens-only provision bears a close relationship to reducing that burden. *See Toomer*, 334 U.S. at 398 (finding greater costs insufficient to justify discrimination where "[n]othing in the record indicate[d] . . . that the cost of enforcing the laws against [noncitizens] is appreciably greater, or that any substantial amount of the State's general funds is devoted to shrimp

33

conservation."); *Tangier Sound*, 4 F.3d at 267 (finding greater administrative burdens insufficient to justify discrimination where "the record [did] not disclose that the Commonwealth of Virginia has shown that it created any credible method of allocating costs as between residents and nonresidents").

Defendants have offered no evidence that responding to VFOIA requests of noncitizens will create an "appreciably greater" administrative burden. In fact, Defendant Young asserted below that "non-residents have on balance very little interest in obtaining documents under FOIA." Doc. 19, Mem. in Opp. to Plaintiff McBurney's Cross-Mot. for Prelim. Injunction 6. Perhaps more to the point, forty-four states do not have citizens-only provisions in their freedom of information laws, strongly suggesting that the administrative burden of replying to out-of-state public records requests is not onerous. *Meeting Summary of the Rights and Remedies Subcommittee of the Virginia Freedom of Information Act Advisory Council* (July 22, 2010), http://leg2.state.va.us/dls/h&sdocs.nsf/By+Year/ HD152010/$file/HD15.pdf ("Forty-four states do not restrict who may make FOIA requests and there has been no clamoring for changing the law in those states.").

Nor is the supposed problem of administrative costs an evil peculiar to non-Virginians. *See Toomer*, 334 U.S. at 398. All requests under VFOIA, not just those from non-Virginians, impose administrative costs. That is exactly why Virginia agencies and localities may recoup their copying and administrative costs

associated with complying with a FOIA request. *See* Va. Code Ann. § 2.2-3704(F). Because Virginia can charge both citizens and noncitizens making VFOIA requests the costs associated with responding to their requests, barring all requests from noncitizens is not tailored to meet an evil peculiar to non-Virginians. Thus, the availability of reasonable less restrictive means indicates that no sufficient justification can save VFOIA's citizens-only. *See Piper*, 470 U.S. at 284.

*    *    *

Because VFOIA's citizens-only provision impermissibly burdens Hurlbert's and McBurney's fundamental rights under the Privileges and Immunities Clause, it is unconstitutional unless Defendants demonstrate a substantial justification for the discrimination that bears a substantial relationship to the state's objective and that the discrimination is tailored to address an evil peculiar to non-Virginians. The citizens-only provision does not bear a substantial relationship to Defendants' proffered justifications of openness and accountability and, in fact, undermines those justifications. Furthermore, Defendants' claims of increased administrative burdens, even if a substantial justification, are unsupported by any evidence. There is no valid justification for VFOIA's discrimination against noncitizens, and, thus, VFOIA's citizens-only provision is unconstitutional.

35

## II.    VFOIA'S CITIZENS-ONLY PROVISION IS UNCONSTITUTIONAL UNDER THE DORMANT COMMERCE CLAUSE.

VFOIA's citizens-only provision violates the dormant Commerce Clause. Like the Privileges and Immunities Clause, the dormant Commerce Clause prohibits discrimination against out-of-state commercial interests. *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992). It is well established that the Commerce Clause "implies a 'negative' or 'dormant' constraint on the power of States to enact legislation that interferes with or burdens interstate commerce." *Brooks v. Vassar*, 462 F.3d 341, 350 (4th Cir. 2006) (quoting *Dennis v. Higgins*, 498 U.S. 439, 447 (1991)). Accordingly, states may not favor commerce that occurs entirely within the state over commerce that originates out-of-state. *Fulton Corp. v. Faulkner*, 516 U.S. 325, 330–31 (1996). Because VFOIA allows Virginia citizens unfettered access to public documents to use for commercial purposes while barring noncitizens the same access, the law discriminates against interstate commerce and violates the dormant Commerce Clause.

Dormant Commerce Clause challenges to state laws that have adverse effects on interstate commerce are analyzed under a two-tiered approach. First, "a virtually *per se* rule of invalidity" applies when the challenged provision discriminates against interstate commerce facially, in purpose, or in effect. *Envtl. Tech. Council v. Sierra Club*, 98 F.3d 774, 785 (4th Cir. 1996) (citing *Wyoming*, 502 U.S. at 454–55). A discriminatory law is unconstitutional unless the state

36

demonstrates "that it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Beskind v. Easley*, 325 F.3d 506, 515 (4th Cir. 2005) (quoting *Or. Waste Sys., Inc. v. Dept. of Envtl. Quality*, 511 U.S. 93, 100–01 (1994)). If, however, a statute does not discriminate and instead regulates even-handedly, a balancing test applies, and the statute will survive unless the provision's adverse effect on interstate commerce clearly outweighs its putative local benefit. *Yamaha Motor Corp., USA v. Jim's Motorcycle, Inc.*, 401 F.3d 560, 567 (4th Cir. 2005) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

VFOIA is discriminatory on its face and in effect; therefore, the "virtually *per se* rule of invalidity" applies. *See Envtl. Tech.*, 98 F.3d at 785. Because Virginia cannot demonstrate "both that the statute 'serves a legitimate local purpose,' and that this purpose could not be served as well by available nondiscriminatory means," VFOIA's citizens-only provision is unconstitutional. *Maine v. Taylor*, 477 U.S. 131, 138 (1986) (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)).

### A. VFOIA's Citizens-Only Provision Discriminates Against Interstate Commerce On its Face and In Effect.

VFOIA is discriminatory and is therefore subject to rigorous scrutiny. As explained above, a law is deemed discriminatory for dormant Commerce Clause purposes if it (1) discriminates facially, (2) in its practical effect, (3) *or* in its

37

purpose. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 333–34 (4th Cir. 2001). VFOIA discriminates both on its face and in effect. Therefore, the law is subject to rigorous scrutiny regardless of whether VFOIA's drafters had a discriminatory intent. *See Wyoming*, 502 U.S. at 456. The Supreme Court has explained that the "evil of protectionism can reside in legislative means as well as legislative ends." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 626 (1978). Thus, no matter the state's motivation, it cannot discriminate "against articles of commerce coming from outside the State unless there is some reason, apart form their origin, to treat them differently." *Id.* at 626–27.

VFOIA is discriminatory on its face in providing that "all public records shall be open to inspection and copying *by any citizens of the Commonwealth*" and that "access to such records shall not be denied *to citizens of the Commonwealth*." Va. Code Ann. § 2.2-3704(A) (emphasis added). Thus, because the law expressly guarantees access to public records only to Virginia citizens and authorizes the state to bar noncitizens, the law is facially discriminatory.

VFOIA also discriminates in effect because it "favor[s] in-state economic interests over out-of-state interests." *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986). VFOIA discriminates against out-of-state economic interests by denying access to records to noncitizens who seek to use public records for commercial purposes while allowing unfettered access to in-

38

state requesters with similar economic interests. It is undisputed that an individual

with an entirely commercial motive is entitled to public documents under VFOIA.

*Associated Tax Servs. v. Fitzpatrick*, 372 S.E.2d 625, 629 (Va. 1988) ("[T]he

purpose or motivation behind a request is irrelevant to a citizen's entitlement to

requested information."). Accordingly, because Virginia must grant access to

documents requested under VFOIA to individuals with a purely commercial

purpose, Virginia cannot then limit public records only to individuals whose

commercial interests are based in Virginia. In this case, Hurlbert seeks to obtain

real property assessments for his clients, who wish to pay him to obtain those

records on their behalf. JA 47A. VFOIA bars him from accessing this information

while allowing access to identical businesses based in Virginia. In fact, a quick

Internet search located a Virginia-based records retrieval business that requests the

exact same type of real estate documents as Hurlbert. *See* Research and Retrieval

Services, Inc., http://www.researchandretrievals.com (last visited March 15, 2011).

Thus, the citizens-only provision favors in-state economic interests over identical

out-of-state interests, rendering the law discriminatory in effect.[5]

---

[5] *See also Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 488 (D.C. Cir.
1988) (involving a plaintiff whose business was making Freedom of Information
Act requests).

The district court erred by not applying rigorous scrutiny to VFOIA's citizens-only provision and instead applying the *Pike* balancing analysis reserved for evenhanded statutes. The district court stated that the "the crucial inquiry" was whether VFOIA "is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." JA 119A (quoting *City of Philadelphia*, 437 U.S. at 624). However, this quotation from *City of Philadelphia v. New Jersey*, relied on by the district court, was an explanation of the *Pike* test. 437 U.S. at 624. In fact, in *City of Philadelphia*, the Supreme Court found that the waste collection provision at issue was facially discriminatory, *id.* at 628, and therefore applied the stricter test of virtual *per se* invalidity in striking down the statute. *Id.* at 626–27. Like the statute at issue in *City of Philadelphia*, VFOIA's citizens-only provision discriminates on its face and in effect. Accordingly, "because the [challenged statute] is discriminatory, the virtually *per se* rule of invalidity provides the proper legal standard here, not the *Pike* balancing test." *Or. Waste Sys., Inc.*, 511 U.S. at 100.

## B.    VFOIA Is Neither Justified by Legitimate Local Interests, Nor Is It the Least Discriminatory Alternative.

Because the citizens-only provision is discriminatory on its face and in effect, Defendants must demonstrate that the citizens-only provision "advances a legitimate local purpose that cannot be adequately served by reasonable

nondiscriminatory alternatives." *Id.* at 100–01 (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278 (1988)). This is a test of "the strictest scrutiny." *Wyoming*, 502 U.S. at 456 (quoting *Hughes*, 441 U.S. at 337). Defendants cannot satisfy this test because the citizens-only provision does not advance a legitimate government interest.

The Virginia Legislature has said that VFOIA's goal is to combat government secrecy. Va. Code Ann. § 2.2-3700(B) ("The affairs of government are not intended to be conducted in an atmosphere of secrecy[.]"). It adopted VFOIA to "promote an increased awareness by *all* persons of governmental activities." *Id.* (emphasis added). The citizens-only provision does not advance this stated goal of government openness because denying out-of-state citizens access to public documents does not combat government secrecy. Even if the Legislature was only concerned with promoting awareness of government activities among Virginians, granting out-of-state information requests in no way diminishes Virginia citizens' access to these documents. Public records are not a limited resource.

Nor are the administrative costs associated with noncitizen information requests a valid reason for discrimination against interstate commerce. The government's purported desire for administrative convenience cannot cure a constitutional violation. *Cf. City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 508 (1989); *see also Frontiero v. Richardson*, 411 U.S. 677, 690 (1973)

41

("'[A]dministrative convenience' is not a shibboleth, the mere recitation of which dictates constitutionality."). Valid reasons for discrimination against interstate commerce are limited to extremely compelling circumstances, such as a threat to health, safety, or the environment. *Envtl. Tech.*, 98 F.3d at 785. By contrast, almost any state regulation or function involves administrative costs. Thus, allowing those costs to justify discrimination against out-of-state commerce would effectively nullify the dormant Commerce Clause doctrine anytime a policy of non-discrimination would result in increased administrative expenses.

In any event, to the extent that administrative costs can justify discrimination, that argument is inapplicable here because, as explained above at 34, VFOIA expressly authorizes the state and county governments to recover costs associated with complying with a VFOIA request. *See* Va. Code Ann. § 2.2-3704(F). And, Defendants have cited no evidence that honoring out-of-state FOIA requests would noticeably increase administrative costs. In sum, because Defendants have not demonstrated a legitimate interest served by the citizens-only provision that cannot be achieved through less discriminatory means, the provision is invalid.

42

**C.     Government Functions Are Subject to Dormant Commerce Clause Scrutiny When the State Discriminates Among Private Entities.**

In fulfilling a government function, Virginia cannot choose to favor in-state private entities over out-of-state private entities. Whether a state favors a local *public* entity or local *private* industry is the "constitutionally significant" factor in dormant Commerce Clause analysis. *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 334 (2007). For example, *United Haulers* upheld a city ordinance because it benefited a "clearly public facility, while treating all private companies exactly the same." *Id.* at 342. In other words, the city was allowed to discriminate in favor of itself as long as it did not prefer certain private entities over other private entities. By contrast, *C & A Carbone, Inc. v. City of Clarkstown* struck down a similar city ordinance because it benefited local private industry over out-of-state private industry. 511 U.S. 383, 394 (1994). *United Haulers* explained that "the only salient difference" between these ordinances was that the ordinance in *United Haulers* favored local government, while the ordinance in *Carbone* favored local private industry. *United Haulers*, 550 U.S. at 334. Similarly, in *Department of Revenue of Kentucky v. Davis*, the Court upheld a Kentucky tax law favoring bonds issued by the state over out-of-state bonds because the tax scheme favored "not local private entrepreneurs, but the Commonwealth and local governments." 553 U.S. 328, 341, 348 (2008).

43

VFOIA's citizens-only provision is like the ordinance in *Carbone*, and unlike the laws in *United Haulers* and *Davis*, because it favors in-state private entrepreneurs at the expense of out-of-state entrepreneurs like Hurlbert. Therefore, because VFOIA's citizens-only provision lacks the "constitutionally significant" attribute of favoring local *public* entities, it is invalid under the dormant Commerce Clause.

## CONCLUSION

For the foregoing reasons, the judgment below should be reversed, with directions that the district court declare the citizens-only provision of Virginia's Freedom of Information Act unconstitutional, enjoin the provision's enforcement, and require the Defendants to process Plaintiffs' pending and future VFOIA requests.

Respectfully submitted,


s/ Leah M. Nicholls
Leah M. Nicholls
Brian Wolfman
INSTITUTE FOR PUBLIC REPRESENTATION
Georgetown University Law Center
600 New Jersey Avenue, NW, Suite 312
Washington, DC 20001
(202) 662-5300[*]

Stephen W. Bricker
BRICKER LAW FIRM, P.C.
411 E. Franklin Street, Suite 504
Richmond, VA 23219
(804) 549-2304

*Counsel for Appellants Mark J. McBurney
and Roger W. Hurlbert*

March 16, 2011

---

[*] Counsel gratefully acknowledge the substantial assistance of Dena Feldman and Anna McClure, both of whom are third-year law students at Georgetown University Law Center.

## REQUEST FOR ORAL ARGUMENT

This appeal presents an important constitutional issue of first impression in this Circuit, and the court below decided the question contrary to the holding of another court of appeals. Appellants therefore request oral argument.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,616 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2008 in 14 point Times New Roman font.

   s/ Leah M. Nicholls   
Leah M. Nicholls
*Counsel for Appellants Mark J.*
*McBurney and Roger W. Hurlbert*

**STATUORY ADDENDUM**

**Virginia Freedom of Information Act**

**VA. CODE ANN. § 2.2-3700(B)**

B.  By enacting this chapter, the General Assembly ensures the people of the Commonwealth ready access to public records in the custody of a public body or its officers and employees, and free entry to meetings of public bodies wherein the business of the people is being conducted. The affairs of government are not intended to be conducted in an atmosphere of secrecy since at all times the public is to be the beneficiary of any action taken at any level of government. Unless a public body or its officers or employees specifically elect to exercise an exemption provided by this chapter or any other statute, every meeting shall be open to the public and all public records shall be available for inspection and copying upon request. All public records and meetings shall be presumed open, unless an exemption is properly invoked.

The provisions of this chapter shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government. Any exemption from public access to records or meetings shall be narrowly construed and no record shall be withheld or meeting closed to the public unless specifically made exempt pursuant to this chapter or other specific provision of law. This chapter shall not be construed to discourage the free discussion by government officials or employees of public matters with the citizens of the Commonwealth.

All public bodies and their officers and employees shall make reasonable efforts to reach an agreement with a requester concerning the production of the records requested.

Any ordinance adopted by a local governing body that conflicts with the provisions of this chapter shall be void.

1A

V<small>A.</small> C<small>ODE</small> A<small>NN.</small> § 2.2-3704

A. Except as otherwise specifically provided by law, all public records shall be open to inspection and copying by any citizens of the Commonwealth during the regular office hours of the custodian of such records. Access to such records shall not be denied to citizens of the Commonwealth, representatives of newspapers and magazines with circulation in the Commonwealth, and representatives of radio and television stations broadcasting in or into the Commonwealth. The custodian may require the requester to provide his name and legal address. The custodian of such records shall take all necessary precautions for their preservation and safekeeping.

B. A request for public records shall identify the requested records with reasonable specificity. The request need not make reference to this chapter in order to invoke the provisions of this chapter or to impose the time limits for response by a public body. Any public body that is subject to this chapter and that is the custodian of the requested records shall promptly, but in all cases within five working days of receiving a request, provide the requested records to the requester or make one of the following responses in writing:

> 1. The requested records are being entirely withheld because their release is prohibited by law or the custodian has exercised his discretion to withhold the records in accordance with this chapter. Such response shall identify with reasonable particularity the volume and subject matter of withheld records, and cite, as to each category of withheld records, the specific Code section that authorizes the withholding of the records.

> 2. The requested records are being provided in part and are being withheld in part because the release of part of the records is prohibited by law or the custodian has exercised his discretion to withhold a portion of the records in accordance with this chapter. Such response shall identify with reasonable particularity the subject matter of withheld portions, and cite, as to each category of withheld records, the specific Code section that authorizes the withholding of the records. When a portion of a requested record is withheld, the public body may delete or excise only that portion of the record to which an exemption applies and shall release the remainder of the record.

2A

3. The requested records could not be found or do not exist. However, if the public body that received the request knows that another public body has the requested records, the response shall include contact information for the other public body.

4. It is not practically possible to provide the requested records or to determine whether they are available within the five-work-day period. Such response shall specify the conditions that make a response impossible. If the response is made within five working days, the public body shall have an additional seven work days in which to provide one of the four preceding responses.

[Subsections C, D]

E. Failure to respond to a request for records shall be deemed a denial of the request and shall constitute a violation of this chapter.

F. A public body may make reasonable charges not to exceed its actual cost incurred in accessing, duplicating, supplying, or searching for the requested records. No public body shall impose any extraneous, intermediary or surplus fees or expenses to recoup the general costs associated with creating or maintaining records or transacting the general business of the public body. Any duplicating fee charged by a public body shall not exceed the actual cost of duplication. The public body may also make a reasonable charge for the cost incurred in supplying records produced from a geographic information system at the request of anyone other than the owner of the land that is the subject of the request. However, such charges shall not exceed the actual cost to the public body in supplying such records, except that the public body may charge, on a pro rata per acre basis, for the cost of creating topographical maps developed by the public body, for such maps or portions thereof, which encompass a contiguous area greater than 50 acres. All charges for the supplying of requested records shall be estimated in advance at the request of the citizen.

[Subsections G, H, I, J]

3A

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2011, I caused two copies of the foregoing

Brief of Appellants to be served by first-class mail, postage prepaid, on each party

through their counsel at the following addresses:

Stephen R. McCullough
OFFICE OF THE ATTORNEY GENERAL
900 E. Main St., Fourth Floor
Richmond, VA 23219
Counsel for Appellee Nathaniel L. Young, Jr.

Benjamin Adelbert Thorp, IV
OFFICE OF THE COUNTY ATTORNEY
County of Henrico
P.O. Box 90775
Henrico, VA 23273-0775
Counsel for Appellee Samuel A. Davis

s/ Leah M. Nicholls
Leah M. Nicholls
*Counsel for Appellants Mark J. McBurney
and Roger W. Hurlbert*